UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CASE NO. 4:10cv81 - RH/WCS

DAVID CLEGG and SHARON ALLEN,

Plaintiffs,

v.

DEPARTMENT OF JUVENILE JUSTICE, GULF COAST TREATMENT CENTER, INC., ASHER ZASLAW, JOHANA PEREZ, KEITH WILLIAMS, KELBY RAMER, DONNA BAREFOOT, LOURDES QUIRAY, and ROBERT ELLIS,

Defendants.
_______________________________________/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' DEPARTMENT OF JUVENILE JUSTICE, GULF COAST TREATMENT CENTER, INC., ASHER ZASLAW , JOHANA PEREZ, KEITH WILLIAMS, KELBY RAMER, DONNA BAREFOOT, AND ROBERT ELLIS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs, by and thorough undersigned counsel, hereby respond in opposition to the Defendants' Department of Juvenile Justice, Gulf Coast Treatment Center, Inc., Asher Zaslaw. Johana Perez, Keith Williams, Kelby Ramer, Donna Barefoot, and Robert Ellis motion to dismiss the First Amended Complaint. The motion should be denied because the Defendants are not entitled to immunity, the Plaintiffs have

complied with pre-suit requirements, and the complaint states a claim for each cause of action asserted.

## FACTS

On or about August 18, 2008, the Plaintiff David Clegg was committed to DJJ, which placed him in its substance abuse program operated by Gulf Center. DE10-3, ¶17.

Prior to transferring physical custody of Plaintiff to Gulf Center, DJJ was aware that Gulf Center staff were not properly trained, and were prone to ignore mental health problems, frequently causing harm to the DJJ youngsters in the Gulf Center program. DE10-4, ¶20.

During the time that Plaintiff David Clegg was in the custody and care of DJJ/Gulf Center officials, Gulf Center denied access to proper medical care for his mental illness, in that:

1. At the outset of Plaintiff Clegg's stay at Gulf Center, a Comprehensive Behavioral Health Assessment [CBHA] was required by Florida law and by DJJ and Gulf Center procedures;

2. Defendant Zaslaw was the Gulf Center employee expected to obtain the CBHA; the supervisors and other members of the treatment team were expected to make sure CBHA was properly completed;

3. By September 5, 2008, the Defendant knew that Plaintiff Clegg would not communicate with his therapist, and knew that Defendant Zaslaw should have completed a CBHA and made appropriate treatment referrals, but had not;

4. After the initial few weeks, Plaintiff Clegg's condition noticeably worsened; one teacher observed that Plaintiff Clegg was worse than he was, would sit in class and rock back and forth, without being responsive, and indicating he needed professional help;

5. Another teacher noted dramatic withdrawal by Plaintiff Clegg, that the 17 year old Plaintiff Clegg was not speaking or participating in class, and required help to perform even such simple tasks as walking and using the restroom; and

6. The October treatment team meetings relating to Plaintiff Clegg included direct participation by Defendants Zaslaw, Perez, Williams, Ramer, Barefoot and Ellis, each of whom thereby acquired personal knowledge of the clear decompensation of the Plaintiff as well as the failure of identification of Plaintiff Clegg's medical needs and the provision of treatment for the developing problems. DE10-5, ¶26.

At all times material, Defendant DJJ acted through its own employees and through its contract agent Gulf Center's employees and agents. DE10-6, ¶28.

At all times, Defendant facility staff were acting in the course and scope of

their employment at Gulf Center and were within the course and scope of this agency on behalf of DJJ. DE10-7, ¶30.

Within two months of being put into the program Plaintiff David Clegg had lost 30 pounds, due to his mental illness and the concomitant effect of the manifestations of his mental illness being ignored by the Defendants. DE10-7, ¶31.

At all times material, it was the practice of Gulf Center and its personnel to use psychotropic medication for behavior control purposes, instead of providing program participants such as Plaintiff Clegg with proper assessment and actual treatment of identified medical conditions of mental illness. DE10-7, ¶32.

At all times between the involuntary admission of Plaintiff Clegg to Gulf Center in August 2008 and his being "Baker Acted" in mid December 2008, Plaintiff Clegg was subjected to a chemical control regimen which Defendants knew was not intended to treat any condition of Plaintiff, but only to chemically restrain him even though no proper assessment such as a CBHA or appropriate neuropsychological testing had been done. DE10-7, ¶33.

At all times material, Plaintiff David Clegg had a constitutionally protected right under the United States Constitution to be safe and free from harm while in the involuntary custody of Gulf Center, and to have his medical issues timely and properly assessed and treated. DE10-8, ¶36.

Between August and December 2008, Defendants Gulf Center and its staff and administrators Zaslaw, Perez, Williams, Ramer, Barefoot. Quiray and Ellis were aware of the mental health problems of the Plaintiff, but chose to ignore them as a matter of policy, thus denying Plaintiff Clegg access to necessary proactive care needed to minimize the extent of harm to Plaintiff David Clegg. De10-8, ¶37.

As a result of Gulf Center's disregard of and indifference to Plaintiff's constitutionally protected liberty interests and due process right to be provided with proper care, and to be safe and free from harm, Plaintiff David Clegg's medical needs were ignored. He was instead subjected to ridicule and inattention as he continued to lose weight, have trouble eating and have trouble controlling his bladder and bowels. DE10-9, ¶38.

At all times material, Defendant Zaslaw's duties to Plaintiff Clegg included required completion of a "bio-psychosial evaluation", which was not done or, if done, was not done properly. DE10-9, ¶41.

The aforedescribed conduct of Defendant Zaslaw in failing to perform needed tests and to arrange for needed care was with deliberate indifference to the rights of Plaintiff, and violated the civil rights of Plaintiff Clegg. DE10-9, ¶42.

At all times material, Defendant Perez's duties to Plaintiff included the responsibility of making sure Plaintiff Clegg's needs were timely and properly

identified and met. DE10-10,¶45.

As a result of Perez's disregard of and indifference to Plaintiff's constitutionally protected liberty interests and due process right to be provided with proper care, and to be safe and free from harm, Plaintiff David Clegg's medical needs were ignored. He was instead subjected to ridicule and inattention as he continued to lose weight, have trouble eating and have trouble controlling his bladder and bowels. DE-10, ¶46.

At all times material, Defendant Williams' duties to Plaintiff Clegg included making sure Plaintiff Clegg's needs were identified and met. DE10-11, ¶48.

As clinical director, Defendant Williams personally participated in staff meetings relating to Plaintiff Clegg, and knew Plaintiff Clegg's needs were not being met, yet took no action to timely provide Plaintiff Clegg with the services needed. DE10-11, ¶49.

As a result of Defendant Williams' disregard of and indifference to Plaintiff's constitutionally protected liberty interests and due process right to be provided with proper care, and to be safe and free from harm, Plaintiff David Clegg's medical needs were ignored. He was instead subjected to ridicule and inattention as he continued to lose weight, have trouble eating and have trouble controlling his bladder and bowels. DE10-11, ¶50.

At all times material, Defendant Ramer knew Plaintiff Clegg was regressing and that he needed services not being provided. DE10-12, ¶52.

As a result of Defendant Ramer's disregard of and indifference to Plaintiff's constitutionally protected liberty interests and due process right to be provided with proper care, and to be safe and free from harm, Plaintiff David Clegg's medical needs were ignored. He was instead subjected to ridicule and inattention as he continued to lose weight, have trouble eating and have trouble controlling his bladder and bowels. DE10-12, ¶53.

At all times material, Defendant Quiray knew that Plaintiff Clegg was disintegrating and needed a proper psychological assessment for proper diagnosis and treatment of his needs. DE10-13, ¶58.

Notwithstanding, Defendant Quiray chose to ignore the need for neuropsychological testing and the CBHA and instead began subjecting Plaintiff Clegg to medications used as chemical restraints, without ever properly identifying the illness afflicting Plaintiff Clegg. DE10-13, ¶59.

At all times material, Defendant Quiray's duties included making sure that Plaintiff Clegg's needs for services were identified and treated in that capacity. DE10-13,¶60.

As a result of Defendant Quiray's disregard of and indifference to Plaintiff's

constitutionally protected liberty interests and due process right to be provided with proper care, and to be safe and free from harm, Plaintiff David Clegg's medical needs ignored. He was instead subjected to ridicule and inattention as he continued to lose weight, have trouble eating and have trouble controlling his bladder and bowels. DE10-14, ¶61.

At all times material, Defendant Clinic Director, Ellis had a duty to Plaintiff Clegg to make sure his needs were properly identified and treated. DE10-14, ¶63.

Defendant Ellis personally participated in Plaintiff Clegg's case and knew by October 27 that he was decompensating and needed services that were not being provided, yet did not take needed action to provide the care needed. DE10-14, ¶64.

As a result of Defendant Ellis's disregard and indifference to Plaintiff's constitutionally protected liberty interests and due process right to be provided with proper care, and to be safe and free from harm, Plaintiff David Clegg's medical needs were ignored. He was instead subjected to ridicule and inattention as he continued to lose weight, have trouble eating and have trouble controlling his bladder and bowels. DE10-14, ¶65.

At all times material, Defendant DJJ had a duty to use reasonable care for the safety of youngsters committed to it and placed in its custody, including Plaintiff. DE10-15, ¶67.

Defendant DJJ also had a duty to properly provide for the needs of those committed to its legal and physical custody, including Plaintiff. DE10-15, ¶68.

While Plaintiff David Clegg was in the DJJ/Gulf Center program, DJJ and Gulf Center had a duty to keep the Plaintiff safe and free from harm. DE10-15, ¶70.

At all times material, Defendants DJJ and Gulf Center had a duty to provide appropriate enough security, monitoring and supervision that Plaintiff David Clegg would be safe and properly cared for. DE10-15, ¶71.

Defendant DJJ negligently breached the duty it owed Plaintiff in that:

1. DJJ failed to keep Plaintiff safe from harm while Plaintiff was committed to DJJ's custody;

2. DJJ placed Plaintiff into the custody of Gulf Center without taking appropriate action for the safety of the Plaintiff;

3. DJJ negligently failed to monitor the adequacy of care and training provided by Gulf Center to its employees; and

4. DJJ failed to protect Plaintiff from harm humiliation, ridicule and embarrassment. DE10-16, ¶72.

But for DJJ's negligence and disregard, Plaintiff would not have been harmed and subjected to abusive, improper acts while in DJJ's custody; his medical needs would not have been neglected and Plaintiff would not have suffered bodily injury,

psychological trauma, mental anguish, emotional distress, loss of capacity for enjoyment of life and ability to earn money and medical expenses. DE10-16, ¶73.

**STANDARD OF REVIEW**

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). While the Eleventh Circuit requires a heightened pleading standard with respect to §1983 claims, the plaintiff needs only plead "'some factual detail' so that the court can determine whether the defendant violated a clearly established law." *McCall v. Dep't of Human Resources*, 2001 WL 1538847, *5 (M.D. Ga. Nov. 29, 2001)(quoting *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992)).

Moreover, the heightened pleading requirement does not change the standard of review of a Rule 12(b)(6) motion. All factual allegations are still accepted as true and all inferences reasonably drawn therefrom are still viewed in the light most favorable to the plaintiff. *See Manzon v. United States*, 253 F.3d 567 (11th Cir. 2001)(*citing Berkovitz v. United States*, 486 U.S. 531, 540 (1988)). Thus, "[t]he issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Taylor v. Ledbetter*, 818 F.2d 791, 794 n.4 (11th Cir. 1987). *See also, Kyle K. v. Chapman*, 208 F.3d 940 (11th Cir. 2000)(denying defendants' motion to dismiss substantive due process claim and

holding "complaint alleges with sufficient particularity facts establishing a causal connection between defendants' actions and the alleged constitutional violation for purposes of overcoming defendants' qualified immunity"). The Amended Complaint fulfills the heightened pleading requirements by providing detailed factual allegations supporting the claims against the Defendants.

## ARGUMENT

### I.

### THE DEFENDANTS ARE NOT SHIELDED BY ELEVENTH AMENDMENT IMMUNITY

The Plaintiffs agree that the Department and Gulf Coast Center are immune from §1983 claims based solely on *respondeat superior*. However, where the constitutional deprivation is caused by polices or customs of the government agency, then a §1983 claim will stand. "Liability may be imposed due to the existence of an improper policy or from the absence of a policy." *Swint v. City of Wadley*, 51 F.3d 988, 999 (11th Cir. 1995).

In *Ancata v. Prison Health Services, Inc.*, 729 F. 2d 700 (11th Cir. 1985), decedent had been a prisoner at the Broward County jail. His personal representative brought suit against Prison Health Services, the sheriff, and the county. The complaint alleged deliberate indifference to the decedent's medical needs. The district

court dismissed the complaint. The Eleventh Circuit reversed the dismissal as to the county, findings that the allegations were not based solely on *respondeat superior*:

> The county is responsible for insuring that adequate funds are provided to meet the medical needs of inmates. The complaint alleges that "Defendant Broward County is responsible for providing funds to insure that the medical needs of the inmates of the Broward County Jail are properly met. . . . The limited funds provided by the County may have contributed to deliberate indifference shown for the serious medical needs of Anthony Ancata." ***The federal courts have consistently ruled that governments, state and local, have an obligation to provide medical care to incarcerated individuals. This duty is not absolved by contracting with an entity such as Prison Health Services.*** Although Prison Health Services has contracted to perform an obligation owed by the county, ***the county itself remains liable for any constitutional deprivations caused by the policies or customs of the Health Service. In that sense, the county's duty is non-delegable***.
>
> ***
>
> The allegations in this case are different (from those in *Estelle v. Gamble,* 554 F.2d 653 (5th Cir. 1977) in that the plaintiff alleges that the actions and policies of the county and the sheriff's office did affect in various ways the health care received by Mr. Ancata. The actions are not solely based upon their status as a public body.
>
> ***
>
> In *Hearn v. City of Gainesville,* 688 F.2d 1328 (11th Cir. 1982) the court made clear that ***where a governmental entity delegates the final authority to make decisions then***

> ***those decisions necessarily represent official policy.*** 688 F.2d at 1334. The county has a duty to provide adequate medical care both under the United States Constitution and under Florida law. ***Thus, if Prison Health Services and/or its employees have the responsibility to make final decisions regarding a requirement that a prisoner pay for medical attention before receiving it or obtain a court order, then their acts, policies and customs become official policy.***
>
> ***
>
> ***Furthermore, if the county permitted the sheriff and/or prison health officials that it contracted with to establish such a policy or custom [which played a role in the denial of medical care], it may also be liable.*** *See Trezevant v. City of Tampa,* 741 F.2d 336 (11th Cir. 1984). Such liability would not be based upon notions of respondeat superior. The liability would be a result of the county's own policy. *Monell v. New York City Dept. Of Social Services,* 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

(Emphasis added).

Applying a "deliberate indifference" standard, the Eleventh Circuit held:

> Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment.

*Ancata*, 769 F.2d at 704, *citing Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).

The Plaintiffs have alleged that the Defendants' policies were the cause of the

Plaintiffs' constitutional deprivation:

1. The Defendants chose to ignore the Plaintiff's mental health problems as a matter of policy (DE 10-8, ¶37);

2. It was the custom of Defendant Gulf Center and its personnel to use psychotropic medication for behavior control purposes, rather than provide proper assessment and actual treatment of medical conditions and mental illnesses (DE 10-7, ¶32).

Thus, liability may be imposed in this case due to improper policy and custom. And, as in *Ancata*, if the DJJ permitted Gulf Center to establish these policies or customs, it is also liable.

## II.

## THE INDIVIDUAL DEFENDANTS ARE NOT IMMUNE FROM §1983 CLAIMS

Defendants Zaslaw, Perez Williams, Ramer, Barefoot, and Ellis are sued in their individual capacity for deliberate indifference to the Plaintiff's rights while acting in their official capacity. Thus, Eleventh Amendment immunity arguments are moot. Plaintiffs have alleged that these Defendants, while acting under color of state law, were deliberately indifferent to the Plaintiff's medical needs in violation of his constitutional right. *See Richards v. Hemphill*, 2009U.S. Dist. LEXIS 49453 (M.D.

Fla. June 12, 2009).

The Plaintiffs have therefore alleged that the Defendants deprived them of a right secured under the Constitution and that the deprivation occurred under color of state law. Such suits are not barred by the Eleventh Amendment. *See Hafer v. Melo*, 502 U.S. 21, 27-28 (1991). Neither are the Defendants protected by qualified immunity.

The Defendants' motion should be denied insofar as it is based on the argument that the Defendants are entitled to qualified immunity, because both the law and the alleged facts establish willful violations of clearly established constitutional rights. *Saucier v. Katz*, 533 U.S. 194 (2001) sets forth the two-part inquiry in a qualified immunity analysis. The initial inquiry must be the threshold question of whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. *Id.* at 201. If a violation is pleaded, the next step is to ask whether the right was clearly established. *Id.*

The Amended Complaint clearly contains allegations reflecting that the Defendants' conduct violated the Plaintiffs' constitutional rights. The allegations in the complaint also clearly set forth the requisite elements of deliberate indifference: that the Defendants had a duty to the Plaintiff, that they performed that duty without regard for the Plaintiff's medical needs, that their indifference to the Plaintiff's needs

caused harm to the Plaintiff in violation of his right to have his medical needs treated.

The right of the Plaintiff to have his medical needs properly treated has been clearly established by the Eleventh Circuit. In *Thomas v. Town of Davie*, 847 F. 2d 771 (11th Cir. 1988), the basic claim was that Thomas was denied proper medical care and that his need for care was apparent. The Eleventh Circuit applied the *Estelle v. Gamble* deliberate indifference standard and reversed the dismissal of Thomas' claim against the municipality, the chief of police, officers. The court held that" ***[d]eliberate indifference to serious medical needs may be shown by*** failure to provide prompt attention to those needs by delaying necessary medical treatment for nonmedical reasons or by proving ***a policy of deficiencies in staffing or procedures such that the [pretrial detainee] is effectively denied access to adequate medical care***." *Id.* at 773, *citing Anderson v. City of Atlanta*, 778 F.2d 678, 686 n.12 (11th Cir. 1985); *Ancata* at 704; *Aldridge v. Montgomery*, 753 F.2d 970 (11th Cir. 1985). (Emphasis added).

In this case, the Plaintiffs have alleged:

1. Prior to transferring physical custody of Plaintiff to Gulf Center, DJJ was aware that Gulf Center staff were not properly trained, and were prone to ignore mental health problems, frequently causing harm to the DJJ youngsters in the Gulf Center program. DE 10-4, ¶ 20.

2. At all times material, Defendants DJJ and Gulf Center knew or should

have known that the training given to program officials did not sufficiently provide program officials necessary information regarding the right of residents such as Plaintiff to be kept safe and provided with proper medical care. DE 10-4, ¶ 23.

3. The staff's training was inadequate and insufficient to properly provide appropriate guidelines and job standards for proper performance of their job in a manner sufficient to meet the needs of Plaintiff Clegg. DE 10-4, ¶ 25

4. During the time that Plaintiff David Clegg was in the custody and care of DJJ/Gulf Center officials, Gulf Center denied access to proper medical care for his mental illness, in that:

a. At the outset of Plaintiff Clegg's stay at Gulf Center, a Comprehensive Behavioral Health Assessment [CBHA] was required by Florida law and by DJJ and Gulf Center procedures;

b. Defendant Zaslaw was the Gulf Center employee expected to obtain the CBHA; the supervisors and other members of the treatment team were expected to make sure the CBHA was properly completed;

c. By September 5, 2008, the Defendants knew that Plaintiff Clegg would not communicate with his therapist, and knew that Defendant Zaslaw should have completed a CBHA and made appropriate treatment referrals, but had not;

d. After the initial few weeks, Plaintiff Clegg's condition noticeably worsened; one teacher observed that Plaintiff Clegg was worse than he was, would sit in class and rock back and forth, without being responsive, and indicating he needed professional help.

e. Another teacher noted dramatic withdrawal by Plaintiff Clegg, that the 47 year old Plaintiff Clegg was not speaking or participating in class, and required help to perform even such simple tasks as walking and using the restroom; and

f. The October treatment team meeting relating to Plaintiff Clegg included direct participation by Defendants Zaslaw, Perez, Williams, Ramer, Barefoot and Ellis, each of whom thereby acquired personal knowledge of the clear decompensation of the Plaintiff as well as he failure of identification of Plaintiff Clegg's medical needs and the provision of treatment for the developing problems. DE 10-5, ¶ 26.

5. Within two months of being put into the program Plaintiff David Clegg had lost 30 pounds, due to his mental illness and the concomitant effect of the manifestations of his mental illness being ignored by the Defendants. DE 10-7, ¶ 31.

6. At times material, it was the practice of Gulf Center and its personnel to use psychotropic medication for behavior control purposes, instead of providing

program participants such as Plaintiff Clegg with proper assessment and actual treatment of identified medical conditions and mental illnesses. DE10-7, ¶ 32.

7. At all times between the involuntary admission of Plaintiff Clegg to Gulf Center to Gulf Center in August 2008 and his being "Baker Acted" in mid December 2008, Plaintiff Clegg was subjected to a chemical control regimen which Defendants knew was not intended to treat any condition of Plaintiff but only to chemically restrain him, even though no proper assessment such as a CBHA or appropriate neuropsychological testing had been done. DE 10-7, ¶ 33.

Actionable deliberate indifference is shown where the defendant "exhibited deliberate indifference to a *known injury*, a *known risk*, *or a specific duty*." *Roes v. Florida Dep't of Children & Family Svcs.*, 176 F. Supp. 2d 1310, 1322 (S.D. Fla. 2001).

Even after the Supreme Court provided further clarification to the term "deliberate indifference" in *Farmer,* 511 U.S. 825, the courts have continued to hold that "one way to prove that an official acted with deliberate indifference is to show that he repeatedly acted in a certain manner." *See Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). *See also Hope v. Pelzer,* 536 U.S. 730 (2002). There certainly does not need to be any showing that the defendant "acted or failed to act believing that harm actually would befall" the Plaintiff to amount to deliberate indifference. *See*

*Farmer* at 842. Thus, the Plaintiffs having demonstrated a violation of a clearly established constitutional right, the Defendants are not entitled to qualified immunity.

## III.

## THE DEPARTMENT OF JUVENILE JUSTICE MAY BE LIABLE IN TORT FOR PLACING THE PLAINTIFF IN A HARMFUL FACILITY

The First Amended Complaint alleges that the Department had a duty to keep the Plaintiff safe from harm and that it breached that duty by subjecting him to harm from inadequately trained personnel, as well as breach of duty for indifference to his medical needs. The allegations pertain to the Defendant's failure to provide for the Plaintiff's needs and failure to prevent harm.

There is no allegation that the Plaintiff should have been placed somewhere else or that specific services should have been provided. Therefore, this case is not analogous to *Department of Health & Rehabilitation Services v. B.J.M.*, 656 So. 2d 906 (Fla. 1995), but rather to *Department of Health & Rehabilitation Services v. Whaley*, 574 So. 2d 100 (Fla. 1991). In *B.J.M.,* the plaintiff sought to compel H.R.S. to place him in a specific placement program as well as alleging a breach of duty for not following recommended psychiatric placement reports, failing to provide proper counseling, failing to provide vocational and educational services, and failing to meet B.J.M.'s emotional and developmental needs. In that case, the Florida Supreme Court

determined that placement decisions and allocation of services are discretionary acts shielded by sovereign immunity.

However, in *Whaley*, which the supreme court distinguished in *B.J.M.*, the supreme court held that specific placement is an operational level decision not shielded by immunity. In *Whaley*, the plaintiff had been placed in a room at a detention facility with known violent offenders and brought suit for his resulting injuries. The placement decision was held to be operational, not shielded by sovereign immunity. The supreme court held:

> A governmental employee's negligence that proximately causes injury to another entitles the injured party to redress. *Hargrove v. Town of Cocoa Beach, 96 So. 2d 130 (Fla. 1957)*. Deciding whether to take someone into custody is a discretionary act for which sovereign immunity has not been waived. *Everton v. Willard, 468 So. 2d 936 (Fla. 1985)*. A person taken into custody, however, "is owed a common law duty of care." *Kaiser, 543 So. 2d at 734*. Numerous cases have recognized that this duty of exercising reasonable care exists and that it is an operational level function. *E.g., Kaisner; Dunagan v. Seely, 533 So. 2d 867 (Fla. 1st DCA 1988); Sanders v. City of Belle Glade, 510 So. 2d 962 (Fla. 4th DCA 1987)*; *Spann v. State Department of Corrections, 421 So. 2d 1090 (Fla. 4th DCA 1982); review denied, 430 So. 2d 452 (Fla. 1983); White v. Palm Beach County, 404 So. 2d 123 (Fla. 4th DCA 1981). Accord Restatement (Second) of Torts §320* (1965). To find that a custodian breached the duty of reasonable care, a plaintiff must show the injury to have been a reasonably foreseeable consequence of the custodian's

> negligence. *Spann; Restatement (Second) of Torts § 320* (1965). *See Kaiser; Sanders*.

*Whaley*, 574 So. 2d at 103-104.

Restatement (Second) of Torts § 320 states in part:

> § 320. Duty of Person Having Custody of Another to Control Conduct of Third Persons
>
> One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so as to control the conduct of third persons as to prevent them from intentionally harming the other *or so conducting themselves as to create an unreasonable risk of harm*. (Emphasis added).

*Whaley*, at 104.

As in all negligence cases, where the defendant's conduct creates a risk, foreseeability should be resolved by a jury. *Henderson v. Bowdern*, 737 So. 2d 532 (Fla. 1999).

Count IX-B is brought pursuant to Florida Statutes section 768.28 which states:

> § 768.28. Waiver of sovereign immunity in tort actions; recovery limits; limitation on attorney fees; statute of limitations; exclusions; indemnification; risk management programs
>
> (1) In accordance with

> 1.s. 13, Art. X of the State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of the employee's office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act. Any such action may be brought in the county where the property in litigation is located or, if the affected agency or subdivision has an office in such county for the transaction of its customary business, where the cause of action accrued. However, any such action against a state university board of trustees shall be brought in the county in which that university's main campus is located or in the county in which the cause of action accrued if the university maintains therein a substantial presence for the transaction of its customary business.
>
> (2) As used in this act, "state agencies or subdivisions" include the executive departments, the Legislature, the judicial branch (including public defenders), and the independent establishments of the state, including state university boards of trustees; counties and municipalities; and corporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities, including the Florida Space Authority.

The Plaintiffs have alleged, and the Defendants agree (*See* DE 18-8) that Gulf Coast Treatment Center is an agent of the State. Therefore, the Defendant DJJ is

vicariously liable for the negligence of its employee Gulf Coast, as well as its own negligence. Gulf Coast is vicariously liable for the acts of its employees pursuant to the statute. Whereas §1983 may not customarily be based solely on *respondeat superior*, tort claims pursuant to Florida law are customarily based on vicarious liability. Thus, the Plaintiffs have stated a cause of action pursuant to Florida law to which immunity has been waived, so that Count IX-B should not be dismissed.

**IV.**

**THE PLAINTIFFS HAVE COMPLIED WITH PRE-SUIT REQUIREMENTS**

The First Amended Complaint alleges: "All conditions precedent including but not limited to the giving of notice have been satisfied or complied with." DE 10-7, ¶ 34. The allegation must be taken as true when evaluating a motion to dismiss. *See* Rule 12(b)(6). Additionally, failure of notice is an affirmative defense not properly resolved by a motion to dismiss. Therefore, Count IX cannot be dismissed on this basis.

The Plaintiffs have alleged that the Defendants Department of Juvenile Justice, Gulf Coast Treatment Center, Inc., Asher Zaslaw. Johana Perez, Keith Williams, Kelby Ramer, Donna Barefoot, and Robert Ellis were deliberately indifferent to Clegg's medical needs, not that medical treatment was inadequate, claims of §1983

violations. Chapter 766 notice requirements do not apply to these claims.

**V.**

**PLAINTIFF SHARON ALLEN**
**HAS STATED A CAUSE OF ACTION**

Plaintiff Allen brings a derivative claim on her own behalf. Parents have a fundamental liberty interest in the care, custody, and companionship of their children. *See Stanley v. Illinois*, 405 U.S. 645, 651 (1972). The mother can be inferred to allege that her constitutionally protected liberty interest in the care of her child has been violated. In paragraphs 82 and 83 of the First Amended Complaint, Plaintiff alleges that as Clegg's mother, she had and will have an obligation to meet the needs of the child and that these needs have been greatly increased due to the harm suffered by the child as a result of the Defendants' violation of the child's constitutional rights. Therefore, Plaintiff Allen has alleged a deprivation of the right to care for the child. The lack of detail of the allegation is not a sufficient basis to grant a 12(b)(6) motion. *See Mendoza v. Brewster School District No. 111*, 2007 U.S. Dist. LEXIS 55284 (E.D. Wa. July 31, 2007). Thus, the motion to dismiss the mother's claim (Count X) should be denied.

**CONCLUSION**

WHEREFORE, the Defendants are not shielded by Eleventh Amendment or

qualified immunity, sovereign immunity does not apply to the operational decision to place the Plaintiff at Gulf Coast Center, the Center and the Department being vicariously liable pursuant to Florida law, conditions precedent having been complied with, and Plaintiff Allen having alleged a constitutional violation in her own right, the motion to dismiss should be denied.

Respectfully submitted,

WASSON & ASSOCIATES, CHARTERED
Courthouse Plaza—Suite 600
28 West Flagler Street
Miami, FL 33130
(305) 372-5220 Telephone
(305) 372-8067 Facsimile
*roy@wassonandassociates.com*

KAREN A. GIEVERS, P.A.
524 E. College Avenue
Suite 2
Tallahassee, FL 32301
(850) 222-1961 Telephone
(850) 222-2153 Facsimile
*kgievers@karengievers.com*

Counsel for Plaintiffs

By: s/Roy D. Wasson
ROY D. WASSON
Florida Bar No. 332070

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing on this the 11th day of May, 2010.

By: s/Roy D. Wasson
ROY D. WASSON
Florida Bar No. 332070

**Service List**

**Plaintiffs' Counsel**
Karen Gievers
Karen A. Gievers, P.A.
524 East College Avenue
Suite 2
Tallahassee, FL 32301
(850) 222-1961 Telephone
(850) 222-2153 Facsimile
*kgievers@karengievers.com*

Roy D. Wasson
Annabel C. Majewski
WASSON & ASSOCIATES, CHARTERED
Courthouse Plaza—Suite 600
28 West Flagler Street
Miami, FL 33130
(305) 372-5220 Telephone
(305) 372-8067 Facsimile
*roy@wassonandassociates.com*
*annabel@wassonandassociates.com*

**Defendants' Counsel**
John S. Stevens and Jonathan C. Abel
Conroy, Simberg, Ganon, Krevans, Abel, Lurvey, Morrow & Schefer
3440 Hollywood Boulevard
Second floor
Hollywood, FL 33021
(954) 518-1400 Telephone
(954) 518-8640 Facsimile
*jstevens@conroysimberg.com*
*jabel@conroysimberg.com*