UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CASE NO. 4:10cv81 - RH/WCS

DAVID CLEGG and SHARON ALLEN,

    Plaintiffs,

v.

DEPARTMENT OF JUVENILE JUSTICE,
GULF COAST TREATMENT CENTER,
INC., ASHER ZASLAW, JOHANA PEREZ,
KEITH WILLIAMS, KELBY RAMER,
DONNA BAREFOOT, LOURDES QUIRAY,
and ROBERT ELLIS,

    Defendants.
_____/

## RESPONSE TO DEFENDANT LOURDES QUIRAY'S MOTION TO DISMISS

Plaintiffs, by and thorough undersigned counsel, hereby respond in opposition to Defendant Lourdes Quiray's motion to dismiss the First Amended Complaint (DE-27). The motion should be denied because the Defendant is not entitled to immunity, the Plaintiffs have complied with pre-suit requirements, and the complaint states a claim for each cause of action asserted.

## FACTS

On or about August 18, 2008, the Plaintiff David Clegg was committed to DJJ, which placed him in its substance abuse program operated by Gulf Center. DE10-3, ¶17.

The general purpose of the program was to modify behavior, to teach youth a lesson, and to rehabilitate youth such as Plaintiff David Clegg, consistent with applicable law. DE10-4, ¶21.

At all times material, Defendant Quiray was a psychiatrist affiliated with Gulf Center. DE10-3, ¶14.

At all times material, Gulf Center employees/DJJ therapist Zaslaw, case manager Perez, administrator Keith Williams, nursing staff Ramer and Barefoot, psychiatrist Quiray and clinical director Ellis were acting on behalf of both DJJ and Gulf Center. DE 10-4, ¶24.

The staff's training was inadequate and insufficient to properly provide appropriate guidelines and job standards for proper performance of their job in a manner sufficient to meet the needs of Plaintiff Clegg. DE 10-5, ¶25.

During the time that Plaintiff David Clegg was in the custody and care of DJJ/Gulf Center officials, Gulf Center denied access to proper medical care for his mental illness, in that:

2

1.   At the outset of Plaintiff Clegg's stay at Gulf Center, a Comprehensive Behavioral Health Assessment [CBHA] was required by Florida law and by DJJ and Gulf Center procedures DE10-5;

2.   Defendant Zaslaw was the Gulf Center employee expected to obtain the CBHA; the supervisors and other members of the treatment team were expected to make sure CBHA was properly completed DE10-5;

3.   By September 5, 2008, the Defendant knew that Plaintiff Clegg would not communicate with his therapist, and knew that Defendant Zaslaw should have completed a CBHA and made appropriate treatment referrals, but had not DE10-5;

4.   After the initial few weeks, Plaintiff Clegg's condition noticeably worsened; one teacher observed that Plaintiff Clegg was worse than he was, would sit in class and rock back and forth, without being responsive, and indicating he needed professional help DE10-5;

5.   Another teacher noted dramatic withdrawal by Plaintiff Clegg, that the 17 year old Plaintiff Clegg was not speaking or participating in class, and required help to perform even such simple tasks as walking and using the restroom DE10-6.

At all times material, Defendant Quiray was acting in the course and scope of her employment at Gulf Center. DE10-7, ¶30.

Within two months of being put into the program Plaintiff David Clegg had

lost 30 pounds due to his mental illness and the concomitant effect of the manifestations of his mental illness being ignored by the Defendants. DE10-7, ¶31.

At all times material, it was the practice of Gulf Center and its personnel to use psychotropic medication for behavior control purposes, instead of providing program participants such as Plaintiff Clegg with proper assessment and actual treatment of identified medical conditions of mental illness. DE10-7, ¶32.

At all times between the involuntary admission of Plaintiff Clegg to Gulf Center in August 2008 and his being "Baker Acted" in mid December 2008, Plaintiff Clegg was subjected to a chemical control regimen which the Defendant knew was not intended to treat any condition of Plaintiff, but only to chemically restrain him even though no proper assessment such as a CBHA or appropriate neuropsychological testing had been done. DE10-7, ¶33.

At all times material, Plaintiff David Clegg had a constitutionally protected right under the United States Constitution to be safe and free from harm while in the involuntary custody of Gulf Center, and to have his medical issues timely and properly assessed and treated. DE10-8, ¶36.

Between August and December 2008, Defendants Gulf Center and its staff and administrators Zaslaw, Perez, Williams, Ramer, Barefoot, Quiray, and Ellis were aware of the mental health problems of the Plaintiff, but chose to ignore them as a

matter of policy, thus denying Plaintiff Clegg access to necessary proactive care needed to minimize the extent of harm to Plaintiff David Clegg. De10-8, ¶37.

At all times material, Defendant Quiray knew that Plaintiff Clegg was disintegrating and needed a proper psychological assessment for proper diagnosis and treatment of his needs. DE10-13, ¶58.

Notwithstanding, Defendant Quiray chose to ignore the need for neuropsychological testing and the CBHA and instead began subjecting Plaintiff Clegg to medications used as chemical restraints, without ever properly identifying the illness afflicting Plaintiff Clegg. DE10-13, ¶59.

At all times material, Defendant Quiray's duties included making sure that Plaintiff Clegg's needs for services were identified and treated in that capacity. DE10-13, ¶60.

As a result of Defendant Quiray's disregard of and indifference to Plaintiff's constitutionally protected liberty interests and due process right to be provided with proper care, and to be safe and free from harm, Plaintiff David Clegg's medical needs were ignored. He was instead subjected to ridicule and inattention as he continued to lose weight, have trouble eating and have trouble controlling his bladder and bowels. DE10-14, ¶61.

## **STANDARD OF REVIEW**

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). While the Eleventh Circuit requires a heightened pleading standard with respect to §1983 claims, the plaintiff needs only plead "'some factual detail' so that the court can determine whether the defendant violated a clearly established law." *McCall v. Dep't of Human Resources*, 2001 WL 1538847, *5 (M.D. Ga. Nov. 29, 2001)(quoting *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992)).

Moreover, the heightened pleading requirement does not change the standard of review of a Rule 12(b)(6) motion. All factual allegations are still accepted as true and all inferences reasonably drawn therefrom are still viewed in the light most favorable to the plaintiff. *See Manzon v. United States*, 253 F.3d 567 (11th Cir. 2001)(*citing Berkovitz v. United States*, 486 U.S. 531, 540 (1988)). Thus, "[t]he issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Taylor v. Ledbetter*, 818 F.2d 791, 794 n.4 (11th Cir. 1987). *See also, Kyle K. v. Chapman*, 208 F.3d 940 (11th Cir. 2000)(denying defendants' motion to dismiss substantive due process claim and holding "complaint alleges with sufficient particularity facts establishing a causal connection between defendants' actions and the alleged constitutional violation for

6

purposes of overcoming defendants' qualified immunity"). The Amended Complaint fulfills the heightened pleading requirements by providing detailed factual allegations supporting the claims against the Defendants.

## ARGUMENT

### I.

### DEFENDANT QUIRAY IS NOT IMMUNE FROM §1983 CLAIMS

Defendant Quiray is sued in her individual capacity for deliberate indifference to the Plaintiff's rights while acting in her official capacity. Thus, Eleventh Amendment immunity arguments are moot. Plaintiffs have alleged that the Defendant, while acting under color of state law, was deliberately indifferent to the Plaintiff's medical needs in violation of his constitutional right. *See Richards v. Hemphill*, 2009 U.S. Dist. LEXIS 49453 (M.D. Fla. June 12, 2009).

The Eleventh Circuit has held:

> Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment.

*Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 704, (11th Cir. 1985) *citing Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).

7

The Plaintiffs have therefore alleged that the Defendant deprived them of a right secured under the Constitution and that the deprivation occurred under color of state law. Such suits are not barred by the Eleventh Amendment. *See Hafer v. Melo*, 502 U.S. 21, 27-28 (1991). Neither are the Defendants protected by qualified immunity.

The Defendant's motion should be denied insofar as it is based on the argument that the Defendant is entitled to qualified immunity, because both the law and the alleged facts establish willful violations of clearly established constitutional rights. *Saucier v. Katz*, 533 U.S. 194 (2001) sets forth the two-part inquiry in a qualified immunity analysis. The initial inquiry must be the threshold question of whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. *Id.* at 201. If a violation is pleaded, the next step is to ask whether the right was clearly established. *Id.*

The First Amended Complaint clearly contains allegations reflecting that the Defendant's conduct violated the Plaintiffs' constitutional rights. The allegations in the complaint also clearly set forth the requisite elements of deliberate indifference: that the Defendant had a duty to the Plaintiff, that she performed that duty without regard for the Plaintiff's medical needs, that her indifference to the Plaintiff's needs caused harm to the Plaintiff in violation of his right to have his medical needs treated.

The right of the Plaintiff to have his medical needs properly treated has been clearly established by the Eleventh Circuit. In *Thomas v. Town of Davie*, 847 F. 2d 771 (11th Cir. 1988), the basic claim was that Thomas was denied proper medical care and that his need for care was apparent. The Eleventh Circuit applied the *Estelle v. Gamble* deliberate indifference standard and reversed the dismissal of Thomas' claim against the municipality, the chief of police, and the officers. The court held that "***[d]eliberate indifference to serious medical needs may be shown by*** failure to provide prompt attention to those needs by delaying necessary medical treatment for nonmedical reasons or by proving ***a policy of deficiencies in staffing or procedures such that the [pretrial detainee] is effectively denied access to adequate medical care***." *Id.* at 773, citing *Anderson v. City of Atlanta*, 778 F.2d 678, 686 n.12 (11th Cir. 1985); *Ancata*, 769 F.2d at 704; *Aldridge v. Montgomery*, 753 F.2d 970 (11th Cir. 1985). (Emphasis added).

In this case, the Plaintiffs have alleged as it relates to Defendant Quiray:

1. Gulf Center staff were not properly trained, and were prone to ignore mental health problems, frequently causing harm to the DJJ youngsters in the Gulf Center program. DE10-4, ¶ 20;

2. The staff's training was inadequate and insufficient to properly provide appropriate guidelines and job standards for proper performance of their job in a

manner sufficient to meet the needs of Plaintiff Clegg. DE10-4, ¶ 25;

3.   By September 5, 2008, the Defendant knew that Plaintiff Clegg would not communicate with his therapist, and knew that Defendant Zaslaw should have completed a CBHA and made appropriate treatment referrals, but had not; DE10-5;

4.   After the initial few weeks, Plaintiff Clegg's condition noticeably worsened; one teacher observed that Plaintiff Clegg was worse than he was, would sit in class and rock back and forth, without being responsive, and indicating he needed professional help. DE10-5;

5.   Another teacher noted dramatic withdrawal by Plaintiff Clegg, that the 47 year old Plaintiff Clegg was not speaking or participating in class, and required help to perform even such simple tasks as walking and using the restroom. DE 10-5, ¶ 26.

6.   Within two months of being put into the program Plaintiff David Clegg had lost 30 pounds, due to his mental illness and the concomitant effect of the manifestations of his mental illness being ignored by the Defendants. DE 10-7, ¶ 31.

7.   At times material, it was the practice of Gulf Center and its personnel to use psychotropic medication for behavior control purposes, instead of providing program participants such as Plaintiff Clegg with proper assessment and actual treatment of identified medical conditions and mental illnesses. DE10-7, ¶ 32.

8. At all times between the involuntary admission of Plaintiff Clegg to Gulf Center to Gulf Center in August 2008 and his being "Baker Acted" in mid December 2008, Plaintiff Clegg was subjected to a chemical control regimen which the Defendant knew was not intended to treat any condition of Plaintiff but only to chemically restrain him, even though no proper assessment such as a CBHA or appropriate neuropsychological testing had been done. DE 10-7, ¶ 33.

Actionable deliberate indifference is shown where the defendant "exhibited deliberate indifference to a *known injury*, a *known risk, or a specific duty*." *Roes v. Florida Dep't of Children & Family Svcs.*, 176 F. Supp. 2d 1310, 1322 (S.D. Fla. 2001).

Even after the Supreme Court provided further clarification to the term "deliberate indifference" in *Farmer,* 511 U.S. 825, the courts have continued to hold that "one way to prove that an official acted with deliberate indifference is to show that he repeatedly acted in a certain manner." *See Brooks v. Celeste,* 39 F.3d 125, 128 (6th Cir. 1994). *See also Hope v. Pelzer,* 536 U.S. 730 (2002). There certainly does not need to be any showing that the defendant "acted or failed to act believing that harm actually would befall" the Plaintiff to amount to deliberate indifference. *See Farmer* at 842. Thus, the Plaintiffs having demonstrated a violation of a clearly established constitutional right, the Defendants are not entitled to qualified immunity.

11

## II.

## THE PLAINTIFFS HAVE COMPLIED WITH PRE-SUIT REQUIREMENTS

The First Amended Complaint alleges: "All conditions precedent including but not limited to the giving of notice have been satisfied or complied with." DE 10-7, ¶ 34. The allegation must be taken as true when evaluating a motion to dismiss. *See* Rule 12(b)(6). Additionally, failure of notice is an affirmative defense not properly resolved by a motion to dismiss. Therefore, the claim against Defendant Quiray (Count VII) cannot be dismissed on this basis.

Additionally, the Plaintiffs have alleged that the Defendant was deliberately indifferent to Clegg's medical needs, not that medical treatment was inadequate, claims of §1983 violations. Chapter 766 notice requirements do not apply to these claims.

## III.

## PLAINTIFF SHARON ALLEN HAS STATED A CAUSE OF ACTION

Plaintiff Allen brings a derivative claim on her own behalf. Parents have a fundamental liberty interest in the care, custody, and companionship of their children. *See Stanley v. Illinois*, 405 U.S. 645, 651 (1972). The mother can be inferred to allege that her constitutionally protected liberty interest in the care of her child has

12

been violated. In paragraphs 82 and 83 of the First Amended Complaint, Plaintiff alleges that as Clegg's mother, she had and will have an obligation to meet the needs of the child and that these needs have been greatly increased due to the harm suffered by the child as a result of the Defendant's violation of the child's constitutional rights. Therefore, Plaintiff Allen has alleged a deprivation of the right to care for the child. The lack of detail of the allegation is not a sufficient basis to grant a 12(b)(6) motion. *See Mendoza v. Brewster School District No. 111*, 2007 U.S. Dist. LEXIS 55284 (E.D. Wa. July 31, 2007). Thus, the motion to dismiss the mother's claim (Count X) should be denied.

## CONCLUSION

WHEREFORE, the Defendant is not shielded by Eleventh Amendment or qualified immunity, conditions precedent having been complied with or inapplicable, and Plaintiff Allen having alleged a constitutional violation in her own right, the motion to dismiss should be denied.

Respectfully submitted,

| WASSON & ASSOCIATES, CHARTERED | KAREN A. GIEVERS, P.A. |
|:---:|:---:|
| Courthouse Plaza—Suite 600 | 524 E. College Avenue |
| 28 West Flagler Street | Suite 2 |
| Miami, FL 33130 | Tallahassee, FL 32301 |
| (305) 372-5220 Telephone | (850) 222-1961 Telephone |
| (305) 372-8067 Facsimile | (850) 222-2153 Facsimile |
| *roy@wassonandassociates.com* | *kgievers@karengievers.com* |

Counsel for Plaintiffs

By: s/Roy D. Wasson
ROY D. WASSON
Florida Bar No. 332070

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing on this the 28th day of May, 2010.

By: s/Roy D. Wasson
ROY D. WASSON
Florida Bar No. 332070

## Service List

**Plaintiffs' Counsel**
Karen Gievers
Karen A. Gievers, P.A.
524 East College Avenue
Suite 2
Tallahassee, FL 32301
(850) 222-1961 Telephone
(850) 222-2153 Facsimile
*kgievers@karengievers.com*

Roy D. Wasson
Annabel C. Majewski
WASSON & ASSOCIATES, CHARTERED
Courthouse Plaza—Suite 600
28 West Flagler Street
Miami, FL 33130
(305) 372-5220 Telephone
(305) 372-8067 Facsimile
*roy@wassonandassociates.com*
*annabel@wassonandassociates.com*

**Defendants' Counsel**
John S. Stevens and Jonathan C. Abel
Conroy, Simberg, Ganon, Krevans, Abel, Lurvey, Morrow & Schefer
3440 Hollywood Boulevard
Second floor
Hollywood, FL 33021
(954) 518-1400 Telephone
(954) 518-8640 Facsimile
*jstevens@conroysimberg.com*
*jabel@conroysimberg.com*